UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ROBIN L. KNUDSEN,

        Plaintiff,

v.                                             3:14-cv-00785 (CSH)

CAROLYN W. COLVIN, ACTING
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

**RULING ADOPTING RECOMMENDED RULING AFFIRMING THE DECISION OF THE COMMISSIONER AND DENYING MOTION TO REVERSE THE DECISION OF THE COMMISSIONER**

HAIGHT, Senior District Judge:

On May 30, 2014, Plaintiff Robin L. Knudsen filed the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a March 29, 2013 final decision issued by Administrative Law Judge ("ALJ") Matthew Kuperstein of the Social Security Administration. Doc. 1. The ALJ's decision upheld the denial of Plaintiff's application for disability benefits under the Social Security Act. Administrative Record[1] ("AR.") 17-35. Following cross-motions, Magistrate Judge Sarah A. L. Merriam issued a thorough 39-page recommended ruling on June 10, 2015 (the "Recommended Ruling" or "RR"), which found grounds to uphold the ALJ's decision and thereby grant the Commissioner's motion and deny that of the Plaintiff.[2] Doc. 21. Plaintiff filed a timely objection to the Recommended Ruling. Doc. 22. This Ruling resolves that objection.

---

[1] The Administrative Record can be found at Docs. 11-3 through 11-9.

[2] Familiarity with the Recommended Ruling is assumed, including its summary of this case's factual and procedural background.

**I.        Standard of Review**

The standard of review for a district court's evaluation of a magistrate judge's recommended ruling depends on whether a party has filed a timely written objection to the magistrate judge's "proposed findings and recommendations." 28 U.S.C. § 636(b)(1). Written objections are timely if the objecting party serves and files them "within fourteen days after being served with a copy" of the magistrate judge's proposed findings and recommendations. *Id.* The statute further provides: "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* That obligation requires the reviewing judge, in a case where social security benefits have been denied, to "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *see also Burgess v. Astrue*, 537 F.3d 117, 127-28 (2d Cir. 2008). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess*, 537 F.3d at 127 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)).

However, a district court reviews only for "clear error" those portions of a magistrate judge's recommended ruling as to which no specific objection was made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) (Congress did not intend to "require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings"); *Bandhan v. Lab. Corp. of Am.*, 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002) (a "district court evaluating a Magistrate's report may adopt those portions of the report to which no 'specific, written objection'

is made, as long as those sections are not clearly erroneous" (quoting Fed. R. Civ. P. 72(b)).

In sum, I will conduct a *de novo* review of objected-to portions of the Recommended Ruling, thereby reviewing the ALJ's decision as to those subjects for "substantial evidence." I will review the remainder of the Recommended Ruling under a "clearly erroneous" standard.

## II.     Analysis

### A.      Plaintiff's Objections to the Recommended Ruling

Plaintiff objects to the Recommended Ruling on two discrete grounds. *First*, Plaintiff argues that Judge Merriam improperly disregarded Plaintiff's "severe delusional disorder" and the impact that it should have had on the ALJ's analysis of Plaintiff's capacity. *Second*, Plaintiff argues that Judge Merriam failed to properly weigh the opinion evidence of Dr. David Guggenheim, a psychologist who reviewed Plaintiff's mental condition. I will review these aspects of the Recommended Ruling *de novo* (and, therefore, these elements of the ALJ decision for "substantial evidence").

#### 1.       Plaintiff's "Severe Delusional Disorder"

Plaintiff argues that the "Recommended Ruling improperly disregards Ms. Knudsen's severe delusional disorder." Doc. 22-1, at 1. At the outset, Plaintiff argues that the ALJ improperly relied on Plaintiff's overly-optimistic testimony in determining that she was not impaired. *Id.* Reliance on the veracity of Plaintiff's testimony was improper, the argument goes, because she suffers from severe delusional disorder of which the ALJ was aware. In other words, the ALJ should not have credited the rosy picture Plaintiff painted of her abilities. Plaintiff then argues that, after discrediting her own testimony, there is not enough alternative support in the record for the ALJ's finding. *Id.* at 1-3. Specifically, Plaintiff argues that Judge Merriam erred in her holding that the opinions of Drs. Hossein Samai, Mark Waynik, and Katie Carhart provided such alternative independently sufficient

support. *Id.* For the reasons discussed below, this objection is without merit.

At the outset, it must be stated that Plaintiff's objection can only be understood as attacking the Recommended Ruling's Step Three analysis.[3] Specifically, with respect to this argument, Plaintiff objects to the following statement from the Recommended Ruling:

> Plaintiff's primary argument is that Plaintiff's delusions cause her to exaggerate her personal levels of functioning. Even if Plaintiff's statements were not considered, the opinions of the state reviewers, Dr. Carhart, Dr. Waynik and Dr. Samai all support conclusions the ALJ reached.

*Id.* at 1 (quoting RR at 29). However, Plaintiff omits the following sentence, which states: "Therefore, the ALJ committed no error *at Step Three*." RR at 29 (emphasis added). Accordingly, even if the ALJ overly relied on improper evidence at Step Three (here, supposedly, plaintiff's testimony and the reports of the three listed doctors), Plaintiff's objection makes no argument as to, for example, the ALJ's Residual Functional Capacity ("RFC") analysis. This is evident because the ALJ's RFC analysis expressly relied on evidence apart from Plaintiff's testimony and the opinions of Drs. Carhart, Waynik, and Samai. For example, in his RFC analysis, the ALJ relied in part on the July 31, 2012 opinion of orthopedic surgeon Dr. Lawrence Lefkowitz who determined, *inter alia*, that

---

[3] The familiar five-step disability evaluation process is described by the Second Circuit in *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) and was summarized properly by Judge Merriam, RR at 4-6. At Step Three, the reviewer decides whether a claimant's "severe impairment" (found at Step Two), is adequately comparable to an impairment specifically identified in the social security regulations. For the reasons discussed in the Recommended Ruling, at 26, the ALJ focused his Step Three analysis on the four factors identified in 20 C.F.R. Pt. 404, Subpart P, 1 § 12.03(B), which encompasses "schizophrenic, paranoid and other psychotic disorders." To be comparable to one of those listings, Plaintiff had the burden of demonstrating she had at least two of the following: (i) "marked restriction of activities of daily living"; (ii) "marked difficulties in maintaining social functioning"; (iii) "marked difficulties in maintaining concentration, persistence, or pace"; or (iv) "repeated episodes of decompensation, each of extended duration." *Id.*

"*She sings and dances and I don't see any reason that she shouldn't do that.*" AR. 31 (citing AR. 929) (emphasis added by ALJ)). For another example, the ALJ also relied on the opinion of Dr. Robert DeCarli, a psychologist, who "conclude[d] that the claimant has moderate limitations in terms of her ability to interact appropriately with the general public as well as accept instructions and respond appropriately to criticism from supervisors," and that "she is capable of 'typical interactions with co-workers and supervisors while completing RRT [routine, repetitive tasks].'" AR. 33. It is therefore clear that Plaintiff's objection here relates only to the ALJ's decision as to Step Three, to which the Court now turns.

*First*, focusing just on the ALJ's Step Three analysis, Plaintiff is mistaken to the extent she argues that the ALJ only relied on Plaintiff's testimony and the reports of Drs. Carhart, Waynik, and Samai. As the ALJ stated, his Step Three

> assessment is based upon consideration of the entire record with particular attention paid to mental health-related treatment notes (Exhibits 1F, 2F, 3F, 4F, 10F, 13F, 19F, 21F), the consultative reports of Drs. Waynik and Samai (Exhibits 8F, 11F), statements made by the claimant in function reports and other written reports submitted in conjunction with her application (Exhibits 1E, 3E, 4E, 6E) and the claimant's demeanor and testimony under oath at the hearing.

AR. 21. A number of the cited documents on which the ALJ expressly claimed reliance at Step Three support the ALJ's findings as to his Step Three analysis (the factors of which are stated *supra* n.3). For example, (i) in March and June 2008, the Southwest Connecticut Mental Health System reported that Plaintiff had been working forty hours per week at Verizon, AR. 412-13; (ii) on October 26, 2011, Dr. Jonathan Horowitz noted that Plaintiff's delusional disorder is "of mild intensity," AR. 747; (iii) in a November 15, 2011 report, Dr. Guggenheim reported Plaintiff was able to manage well her "mild feelings of depressed mood and anxiety," AR. 739; (iv) Dr. Guggenheim said the same in a

January 23, 2012 report, AR. 860; and (v) on August 2, 2012, Dr. Guggenheim reported that Plaintiff "reported that she was doing very well and continues to volunteer and be active in the community" and that "she does not feel she needs BH services at this time," AR. 843.

Moreover, the ALJ stated that he considered "the entire record" at Step Three. AR. 21. This necessarily includes the sources the ALJ specifically cited in his RFC analysis discussed above. These sources support the ALJ's findings that the relevant Step Three factors are not satisfied.[4] Accordingly, even crediting Plaintiff's objection that her testimony should not have been credited, the Court finds that there is substantial alternative evidence in the record to determine that Plaintiff should not have been found disabled at Step Three.

*Second*, even disregarding the above, Plaintiff has not shown that the ALJ's reliance at Step Three on the opinions of Drs. Carhart, Waynik, and Samai was improper. In other words, Plaintiff's challenge to the ALJ's reliance on those sources is unfounded.

Plaintiff objects to placing weight on the opinion of Dr. Samai because he is an

---

[4] Further, the ALJ specifically noted that his RFC analysis implicates the same limitations he addressed at Step Three, albeit in more detail. Specifically, the ALJ stated that:

> The limitations identified in the "paragraph B" criteria [assessed at Step Three] are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, *the following [RFC] assessment reflects the degree of limitations the undersigned has found in the 'paragraph B' mental function analysis*.

AR. 23 (emphasis added). This provides support for the point that the sources the ALJ relied on at the RFC stage also support his Step Three analysis.

anesthesiologist, rather than a psychiatrist, psychologist, or therapist. Doc. 22-1, at 1-2. Even if that were improper, it is of no moment. The ALJ accorded "great weight" to the assessment of Dr. Robert DeCarli, a psychologist, who, as quoted above, reported that Plaintiff is only moderately limited given her condition. AR. 33. Therefore, any over reliance on Dr. Samai's psychological evaluation of Plaintiff is insignificant.[5]

Plaintiff objects to reliance on Dr. Waynik's report because "there is no indication in [his] report that he reviewed any of [Plaintiff's] medical or psychiatric records, or that he based his opinion on anything other than a brief interview with the delusional Ms. Knudsen." Doc. 22-1, at 2. Plaintiff offers no support for her position that a consultative examiner's report should be given no weight simply because the record does not affirmatively demonstrate that he reviewed the Plaintiff's background information. Plaintiff's lone citation to *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir. 1987) is not on point. There, the Court ruled that a doctor's diagnosis was "seriously undermine[d]" in light of his admission, entirely absent here, that "'I have insufficient information upon which to base a specific diagnosis.'" *Id.* at 1200. In fact, in *Jones v. Colvin*, 2015 WL 6561387, at *8 (N.D. Iowa Oct. 30, 2015), the court held that *Gavin* did not set a "bright-line rule" in which "a consultative examiner's findings must be discredited if that examiner did not have access to all medical records." Rather, the court determined that:

> When, as in *Galvin*, the examining source affirmatively references the lack of records and declares that insufficient information exists, it is a significant factor [to consider when deciding the weight to which the evaluation is entitled]. *In other cases, however, the fact that an*

---

[5] Further, Plaintiff raised no objection as to the ALJ's reliance on the report of Dr. Samai until her objection to the Recommended Ruling, and "[i]t is well established that an argument raised for the first time in an objection to a recommended ruling is waived." *Corbit v. Colvin*, 2015 WL 9308221, at *6 (D. Conn. Dec. 22, 2015) (collecting cases).

> *examiner was not provided with medical records may have little or no impact on the validity of the examiner's particular findings*.

*Id.* (emphasis added).  Moreover, in *Galvin*, unlike here, there was "little or no substantial evidence on the record as a whole to support the Secretary." 811 F.2d at 1201.  Therefore, Plaintiff has not shown that reliance on Dr. Waynik's report was improper; nor could she overcome the fact that even if such reliance were improper, there was sufficient alternative evidence in the record to determine that Plaintiff should not have been determined to be disabled at Step Three.[6]

Plaintiff objects to reliance on the reports of Drs. Samai and Waynik because they are overly "short and vague." Doc. 22-1, at 2.  Even if Plaintiff is correct that the reports are "short and vague," however, it would be of no moment.  While certain vague assessments may at times be "useless," vagueness is not dispositive, where as here, there is adequate alternative support in the record and a dearth of contrasting medical evidence.  This is in fact demonstrated by Plaintiff's lone citation for this point, *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000).  In *Curry*, the court held that the ALJ erred by relying on the report of plaintiff's consulting physician because it was "so vague as to render it useless in evaluating whether [plaintiff] can perform sedentary work." *Id.* at 123.  The real error made by the ALJ (and the district court) in *Curry*, however, was crediting that consulting physician's vague opinion over that of the plaintiff's orthopedist, whose opinion as to plaintiff's impairment "contrast[ed] sharply with the [physician's] precise findings." *Id.* at 123 & n.3.  Further, in *Curry*, the ALJ offered no explanation as to why it later rejected the medical diagnosis of that same treating physician while crediting its report as to the issue of impairment.  *Id.* at 124 ("The ALJ does not reconcile this conflict, and we see no basis upon which the ALJ could reject [the physician's]

---

[6] Plaintiff also failed to raise any objection to the ALJ's reliance on the report of Dr. Waynick until the instant objection.  This objection is therefore waived.  *See supra* n.4.

diagnoses while simultaneously relying on his opinion concerning impairment."). Here, where the opinions of Drs. Samai and Waynik are not only uncontradicted, but are further supported by alternative record evidence, their reports' supposed brevity or vaguery are of no import.[7]

Finally, Plaintiff argues that Dr. Carhart's opinion does not support the ALJ's finding in light of Dr. Carhart's notations that Plaintiff "has issues respecting authority," and that she has a "severe impairment" with respect to her insight. Doc. 22-1, at 2-3. By reading those two elements of Dr. Carhart's report in isolation, however, Plaintiff paints a misleading picture of her diagnosis.[8] Elsewhere, Dr. Carhart makes several statements that support the ALJ's finding that Plaintiff is not impaired. Specifically, Dr. Carhart reported that Plaintiff is "oriented to time, place, person," her "memory [is] in tact," her "attention and concentration [are] normal," her speech is of "normal rate and flow," her mood is euthymic, and her judgment is intact. AR. 809-10. Further, Dr. Carhart reported that Plaintiff had "No Problem" (a "1" on a scale of "1" to "5") with respect to four out of five categories specifically addressing Plaintiff's "Activities of Daily Living"; that she had "No Problem" with respect to all categories as to "Task Performance"; and had somewhat mixed reviews as to her "Social Interactions" (but, even there, had one rating of "No Problem," two ratings of "A Slight Problem" (a "2"), only one rating of "An Obvious Problem" (a "3"), and no ratings of a "4" or a "5". AR. 810-11. Those characteristics go to the heart of the factors relevant to the ALJ's Step

---

[7] Plaintiff also failed to raise an objection to the ALJ's reliance on the "short and vague" reports of Drs. Samai and Waynick until the instant objection. This objection is therefore waived. *See supra* n.4.

[8] In addition to the analysis in text, the Court also notes that Plaintiff's reference to Dr. Carhart's statement that Plaintiff "has issues respecting authority" is disingenuous. Doc. 22-1, at 2 (citing AR. 811). The full statement from the report is as follows: "*Pt reports* issues with respecting authority *of Stamford Police Dept, because she believes they have harassed/abused her*." AR. 811 (emphasis added).

Three analysis, *see supra* n.3. Therefore, the ALJ had substantial evidence to determine that Dr. Carhart's report supports the conclusion that Plaintiff has not met her burden of establishing that she meets the criteria listed in 20 C.F.R. Pt. 404, Subpart P, 1 § 12.03(B), *see id*.

Plaintiff has failed to show that the Recommended Ruling improperly disregarded her delusional disorder.

### 2. Opinion Evidence of Dr. David Guggenheim

Plaintiff next argues that the Recommended Ruling ignores the ALJ's supposedly improper failure to assign weight to the opinion of psychologist Dr. Guggenheim. Plaintiff raises three arguments. The Court addresses them in turn.

*First*, she argues that "Dr. Guggenheim's other opinions," apart from those that Dr. Guggenheim co-authored with Dr. Carhart, "should have been assigned weight." Doc. 22-1, at 3. Plaintiff then offers four citations for such "other opinions." *Id.* Two of these citations are not to opinions of Dr. Guggenheim. *Id.* (citing, *inter alia*, AR. 747 ("progress notes" of Dr. Jonathan Horowitz), and AR. 919 (letter from Dr. Carhart)). The other two citations simply support the position that Plaintiff suffered from delusional disorder. In fact, Plaintiff acknowledges that the "other opinions" of Dr. Guggenheim she claims the ALJ overlooked relate simply to the fact that Plaintiff suffered from delusions. *Id.* at 3. However, whether Plaintiff suffered from delusional disorder is not even contested. At Step Two, the ALJ expressly found that "[t]he claimant has . . . delusional disorder," which he described as a "severe impairment." AR. 20. What he then held, at Step Three, is that "the severity of the claimant's [delusional disorder] . . . do[es] not meet or medically equal the criteria of listing[]12.03." AR. 21. And, in fact, Dr. Guggenheim's opinions in many ways support the finding that Plaintiff's delusional disorder does not constitute an impairment

as defined by the four factors relevant to a Section 12.03 analysis,[9] *see supra* n.3. Accordingly, Plaintiff required no further "weight" to satisfy Step Two, and any additional "weight" that Dr. Guggenheim would have provided to Step Three would not have led to the conclusion that Plaintiff is impaired.

*Second*, Plaintiff argues the ALJ improperly "ignor[ed]" Dr. Guggenheim's opinion reflected in reports he co-signed with Dr. Carhart. Doc. 22-1, at 3. However, as aptly described by Judge Merriam: "there is no reason that an ALJ should be required to parse the same opinion twice solely because two doctors co-signed that opinion." Doc. 21, at 31-32. Moreover, Plaintiff's argument makes little sense when one understands that an ALJ gives weight to *opinions*, not opinion-makers.[10] Here, the ALJ specifically "accorded great weight," to "the treating *report* of therapist Katie Carhart, Ph.D. dated February 1, 2012." AR. 33 (emphasis added). Dr. Guggenhem co-signed that report.

---

[9] *See* AR. 739 (November 15, 2011 report stating that Plaintiff "report[s] mild feelings of depressed mood and anxiety but appears able to manage these symptoms well with various coping techniques," and that "Pt appeared calm, euthymic, clear in the session"); AR. 753 (October 5, 2011 report stating: "Orientation oriented to time, place, person. Mood Euthymic. Affect Appropriate. . . . Thought Process Intact. Judgement Minimal impairment. Insight Moderate impairment"); AR. 843 (August 2, 2012 report identical to the quoted portion of the October 5, 2011 report, except this time reporting that her judgment was now "intact" rather than minimally impaired); AR. 860 (January 23, 2012 report stating the same as the cited portion of the August 2, 2012 report).

[10] It is true that "there is some dispute about whether a physician's cosigning something *ipso facto* imparts more weight to it." *Perez v. Colvin*, 2014 WL 4852848, at *4 (D. Conn. Sept. 29, 2014) (citing *Payne v. Astrue*, 2011 WL 2471288, at *5 (D. Conn. June 21, 2011) and *Engebrecht v. Comm'r of Soc. Sec.*, 2014 WL 3409520, at *6 (6th Cir. July 14, 2014)). However, that dispute references a situation distinct from the one at bar. There, the issue was whether an opinion signed by a non-doctor (in *Perez*, a nurse; in *Payne*, a physician's assistant; in *Engebrecht*, a therapist) is entitled to more weight due to a doctor's co-signature. Here, the report in question was written by a doctor, psychologist Dr. Carhart, and the co-signer is another doctor, psychologist Dr. Guggenheim. Further, the ALJ already gave that opinion "great weight." Regardless, even in *Perez*, where the principal author was a nurse, the court held that it was "not convinced that it would have been error to conclude that [the fact that a doctor cosigned the report] imparted no more weight to the report." *Id.* at *4.

AR. 812. Accordingly, to the extent Dr. Guggenheim's co-signing of that report demonstrates that the report contains his opinion, the ALJ gave great weight to Dr. Guggenheim's opinion.

*Third*, and relatedly, Plaintiff argues that, in light of the fact that "supportability is a factor in weighing medical evidence," the ALJ should have given independent weight to the actual fact that Dr. Guggenheim co-signed Dr. Carhart's report. Doc. 22-1, at 4. Plaintiff is correct that 20 C.F.R. § 404.1527(c)(3)[11] indicates that the ALJ will look to "supportability" as a "factor[] in deciding the weight we give to any medical opinion." Specifically, the regulation states that:

> The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with [the patient], the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources.

What is clear from the regulation, then, is that "supportability" refers to "the extent to which the opinion is supported by medical signs, laboratory findings, and explanations." *Wolfe v. Comm'r of Soc. Servs.*, 272 F. App'x 21, 23 (2d Cir. 2008). Nowhere does Section 404.1527(c)(3) imply, as posited by Plaintiff, that a medical report has increased "supportability," as the regulation defines it, in light of a co-signature. Moreover, that the ALJ already gave "great weight" to the opinion signed by Drs. Carhart and Guggenheim demonstrates that the ALJ found the opinion to be adequately supported.

Plaintiff's arguments as to the weight the ALJ placed on Dr. Guggenheim's opinions are

---

[11] Plaintiff inadvertently cites to Section 404.1527(d)(3). Doc. 22-1, at 4.

without merit.

### B. Remaining Aspects of the Recommended Ruling

The Court has reviewed the remaining aspects of the Recommended Ruling for "clear error." It has found none.

### III. Conclusion

The Plaintiff's objections are OVERRULED AND DENIED.

Judge Merriam's Recommended Ruling on Cross Motions [Doc. 22] is ACCEPTED IN FULL.

As a result, Defendant's [18] Motion to Affirm the Decision of the Commissioner is GRANTED, and Plaintiff's [17] Motion to Reverse the Decision of the Commissioner is DENIED.

The Clerk is directed to close the file.

It is SO ORDERED.

Dated: New Haven, Connecticut
February 29, 2016

                   */s/Charles S. Haight, Jr.*
                   Charles S. Haight, Jr.
                   Senior United States District Judge